JAMES CARSON BREVOORT, Appellant, *v.* THE CITY OF BROOKLYN, Respondent.

Where the verification of an assessment-roll in the city of Brooklyn was by affidavit containing the statements "provided by law in regard to assessments in the different towns of this State," but omitted the statement required by the charter of said city (§ 31, tit. 4, chap. 384, Laws of 1854, as amended by § 21, chap. 63, Laws of 1862), to the effect that the assessors "have together personally examined, within the year past, each and every lot and parcel of land. house, building or other assessable property within the ward." *Held,* that the omission was a substantial defect which invalidated the tax and a sale made because of non-payment thereof; and that plaintiff, who had purchased at the sale, under an agreement with the city that in case of any irregularity in the proceedings prior to the sale, the purchase-money should be refunded, could, after demand and refusal, recover back the moneys paid.

A lot was bid off by the registrar of arrears for the city, and a certificate of the sale issued which the registrar sold and assigned to plaintiff under a similar agreement. *Held,* that the registrar had authority to bid in the land, sell the certificate and warrant the validity thereof.

*Brevoort* v. *City of Brooklyn* (18 Hun, 383), reversed.

(Argued April 19, 1882 ; decided May 2, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made July 18, 1879, which reversed a judgment in favor of plaintiff, entered upon an order overruling a demurrer to the complaint and which sustained the demurrer and directed judgment thereon. (Reported below, 18 Hun, 383.)

The substance of the complaint is stated in the opinion.

*John J. Townsend* for appellant. The supervisors had no jurisdiction to levy the taxes because the assessors failed to verify the rolls according to law. (Charter of Brooklyn, 1854, title 4, § 64 [Bishop's edition of 1873], p. 69; Laws of 1854, p. 870, chap. 384, title 4, § 31; Laws of 1862, p. 193, chap. 63, § 21, amending the charter of 1854; Laws of 1865, pp. 1438, 1439, chap. 721, § 7; chap. 176 of Laws of 1851, § 8; *People* v. *Suffern*, 68 N. Y. 326; *Van Rensselaer* v. *Whitbeck*, 7 id. 517; *Westfall* v. *Preston*, 49 id. 349, 355; *Bellinger* v. *Gray*, 51 id. 610, 620; *Bradley* v. *Ward*, 58 id. 402, 406; *Merritt* v. *Village of Port Chester*, 71 id. 309, 312; *Ayres* v. *Moulton*, 51 Vt. 115, 119; *Marsh* v. *Supervisors of Clark Co.*, 42 Wis. 520–514.) The special agreement to refund the purchase-money can be enforced. (*Dill* v. *The Inhabitants of Wareham*, 48 Mass. [7 Metc.] 438; *Gas Co.* v. *San Francisco*, 9 Cal. 453; *Peterson* v. *The Mayor*, 17 N. Y. 449; *Supervisors* v. *Schenck*, 5 Wall. 772, 782; *Pendleton County* v. *Avery*, 13 id. 297, 305; § 17, title 8, charter of 1783; see, also, chap. 62, Laws of 1862, § 31, p. 198, amending § 32, title 5 of charter of 1854.)

*John A. Taylor* for respondent. A substantial compliance with the form prescribed by the statute was all that was required to give the assessors jurisdiction over the subject-matter of the rolls. (*Matter of Petition of Roberts*, 81 N. Y. 62; *Parish* v. *Golden*, 35 id. 462.) The presumption obtains that the assessors, being public officers, discharged their whole duty in making the examination required, even to taking oath that they had made such examination. (Cowen and Hill's Notes, 1291, 1292; *Downing* v. *Ruger*, 21 Wend. 178; *In re Will*

*of John Kellum,* 52 N. Y. 517.) The oath set forth in the complaint was a sufficient verification of the tax-rolls. (Laws of 1881, chap. 176, § 8.) If the omission complained of is more than a mere irregularity and constitutes a jurisdictional defect, still the plaintiff cannot recover since in that case the proceedings were void upon their face and his payment was voluntary. (*Guest* v. *City of Brooklyn,* 69 N. Y. 514; *Peyser* v. *Mayor,* 70 id. 500; *Railroad* v. *Marsh,* 12 id. 308; *Sanford* v. *Mayor,* 12 Abb. Pr. 23; *Fleetwood* v. *City,* 2 Sandf. 475; *Trinity Church* v. *Mayor,* 10 How. Pr. 138; *Purcell* v. *Mayor,* 43 N. Y. Sup. Ct. 348; charter of 1854, p. 78, §§ 11, 13; also p. 85, § 32; *Lynde* v. *Town of Melrose,* 10 Allen, 49; Cooley on Taxation, 572.) The collector and registrar had no authority to bind defendant by a promise to repay. It was, therefore, *nudum pactum* as to both. (Charter of 1854, Laws of 1862, chap. 63, title 5, § 26; *Packard* v. *Inhabitants of North Limerick,* 34 Me. 266; *Lorillard* v. *Town of Monroe,* 11 N. Y. 392; charter of 1873, Laws of 1873, chap. 863, title 7, § 2; charter of 1873, title 8, §§ 1, 5.)

EARL, J. The complaint alleges that at a tax sale held in the city of Brooklyn in June, 1864, for unpaid taxes assessed in 1862, the plaintiff purchased several lots of land and paid therefor in the aggregate $342.66 and that it was "then and there expressly agreed by the defendant with the plaintiff that if there was any irregularity in the proceedings prior to said sale the said purchase-money should be repaid to the plaintiff, provided the certificates which were then and there delivered to the plaintiff and numbered be surrendered to the collector;" that the taxes assessed, on the lots so purchased, for the year 1862 were void because the assessment-roll was not at the time it was delivered to the board of supervisors, or at any other time, sworn to or verified as required by law; that the plaintiff, on the 11th day of April, 1878, tendered such certificates to the registrar of arrears, to the collector of taxes and assessments, and to the comptroller of the city, and offered to surrender the same to each of them; and the complaint also alleges that in

October, 1875, at a public auction held by the registrar of arrears in the city of Brooklyn for the sale of property for unpaid taxes pursuant to law, the city of Brooklyn purchased a lot of land assessed for the taxes of 1872, and a certificate of the sale was made to it, which certificate contained a provision that if any irregularity should be discovered in the proceedings prior to the sale, the purchase-money should be repaid to the purchaser or his assigns, provided the certificate should be surrendered to the registrar of arrears; that in March, 1878, the plaintiff paid to the registrar at his request the sum of $623.80, being an amount equal to an amount which would be required to redeem the lot sold on the day last mentioned, whereupon the registrar, for and in consideration of such payment, assigned to him all the right, title and interest of the city in the certificate and delivered the same to him, and that he has ever since been the holder and owner thereof; that the tax for which the sale was made was void because the assessment-roll for the year 1872, in which the tax was laid, was not sworn to or verified as required by law; that in April, 1878, he tendered the certificate to the registrar of arrears and to the comptroller of the city and offered to surrender the same to each of them; that on the 11th day of April, 1878, he presented a claim for the repayment to him of the two sums of money before mentioned, with interest, to the chief fiscal officer of the defendant; and judgment was demanded for the two sums with interest. The defendant demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled at Special Term, and upon appeal to the General Term it was sustained and judgment given thereon to the defendant.

Section 31 of title 4 of chapter 384 of the Laws of 1854, as amended by section 21 of chapter 63 of the Laws of 1862, requires that the corrected assessment-roll of each ward in the city should be sworn to by at least two of the assessors, "according to the oath provided by law in regard to assessment-rolls in the different towns in this State," and further to the effect that "they have together personally examined, within the year past,

each and every lot or parcel of land, house, building or other assessable property within the ward." The plaintiff alleges that the only verification of the assessment-roll was by an affidavit containing the statements provided by law for assessment-rolls in the different towns in this State, and a copy of the oath attached to each of the assessment-rolls is annexed to the complaint; but the further oath as to the personal examination of each and every lot or parcel of land within the year was wholly omitted. The claim of the plaintiff is that this defect in the assessment-rolls rendered them wholly void, and that the tax sales made under them were absolutely void, and we are of that opinion.

It was the duty of the assessors to make a fair, just and intelligent assessment of property liable to taxation, so that the burden of taxes could be equally and ratably distributed among the tax payers ; and to secure a faithful performance of that duty the law required a prescribed oath to be taken. The purpose of the oath was to require, not only a valuation of the real estate to be assessed, but also a personal examination of all the parcels of real estate within the preceding year, so that the valuation might be intelligently and properly made.

Before the property of one can be compulsorily taken for the payment of taxes or assessments, the substantial requirements of the statute intended for his benefit or protection must be strictly followed. In *Van Rensselaer* v. *Witbeck* (7 N. Y. 517), the certificate, which the assessors of the town were then required to annex to the assessment-roll, was defective, and it was held that where a statute prescribes the form of the certificate to be signed by the assessors and attached to their roll, a substantial compliance with its terms is necessary to give jurisdiction to the board of supervisors to impose a tax and issue their warrant to the collector thereon, and that without such a certificate the assessment-roll is fatally defective. The broad doctrine of that case is now the well-settled law of this State. In *Westfall* v. *Preston* (49 N. Y. 349), ALLEN, J., speaking of that case, said : " The salutary doctrines of that

case cannot be disregarded without encouraging a laxity in the discharge of official duty and endangering the rights of the citizen." He also said: "A substantial compliance with the statute in the measures preliminary to the taxation of persons and property in all matters which are of the substance of the procedure and designed for the protection of the tax payer and the preservation of his rights is a condition precedent to the legality and validity of the tax," and that a substantial compliance with the terms of the statute prescribing the verification of the assessment-roll is necessary to give the board of supervisors jurisdiction to impose a tax and issue their warrant to the collector for its collection. In that case the verification of the assessment-roll was made before the time for its final completion, to-wit, the third Tuesday of August, and it was held to be an absolute nullity, and that the supervisors had no jurisdiction to impose a tax upon the persons or property named in the assessment-roll. In *Bellinger* v. *Gray* (51 N. Y. 610), Mr. Commissioner REYNOLDS held that an assessment-roll not verified by one of the assessors, and not accompanied by a certificate of the other assessors, stating the cause of such omission (1 R. S. 394, § 30), was defective, and that the omission to properly verify it was fatal to its validity. In *Bradley* v. *Ward* (58 N. Y. 401), CHURCH, Ch. J., said: "There is no question but that the affidavit of the assessors, substantially in the form prescribed by the statute, must be attached to the roll in order to give the supervisors jurisdiction to levy the tax, and that a defect in this respect renders their proceeding invalid, and this is an indispensable condition to the validity of their action." In *People, ex rel. Gillies,* v. *Suffern* (68 N. Y. 321), it was said that " for the purpose of securing equality of assessment and taxation among the tax payers the law prescribes a particular oath calculated to secure that end, and until the assessment has the sanction of that oath it has no validity as an assessment, it cannot form the basis of taxation, and can in no sense be said to be finally completed." In *Merritt* v. *Village of Portchester* (71 N. Y. 309), the commissioners of estimate and assessment appointed under the charter of the village of Portchester

(Chap. 818, Laws of 1868), to apportion and assess the expense of a local improvement, instead of taking the oath " faithfully and fully to discharge the duties" required by the charter to be taken before they were authorized to act, each took an oath that he would perform the duties " to the best of his ability ; " and in an action to restrain the collection of the assessment it was held that the failure to take the prescribed oath rendered the proceedings illegal. The case of *Marsh* v. *The Supervisors of Clark County* (42 Wis. 502) is a very instructive case to the same effect.

In the opinion at General Term, and in the brief of the defendant's counsel, some reliance is placed upon the cases of *Parish* v. *Golden* (35 N. Y. 462), and *The Buffalo and State Line Railroad Company* v. *The Board of Supervisors of Erie County* (48 id. 93), upon the point now under consideration. In *Parish* v. *Golden,* the defect in the affidavit of the assessors was trifling, and it was sufficient for the decision of that case to hold that the defect was not substantial ; and for more than that it has not, upon the point now under consideration, been regarded as authority. In *Buffalo and State Line Railroad Company* v. *The Board of Supervisors of Erie County,* all that was decided was that the affidavit to the assessment-roll in that case was a substantial compliance with the statute. In neither of these cases was anything decided which gives countenance to the claim that the oath required by law may be wholly omitted or departed from without rendering the assessment and tax void. Where there has not been a substantial compliance, in imposing taxes, with the statute in matters intended for the benefit and protection of tax payers, the taxes cannot be upheld upon the presumption that the assessors performed their official duty ; it must appear that they performed their duty. Here it was their duty to take the prescribed oath, and that is made by the law the only evidence that they had made the annual examination of real estate liable to taxation which the statute requires. The portion of the oath here omitted was quite substantial ; it was designed to secure the performance of an important duty in the faithful discharge of which

the tax payers were greatly interested.   If that portion of the oath could be omitted, the whole oath could as well be omitted and thus the tax payers be entirely deprived of the sanction of an oath in the taxation of their property.

It is clear, therefore, that these taxes were void and that the sales made for their non-payment were also void.   It is true, as claimed by the defendant, that the invalidity of the assessments appears upon the face of the assessment-rolls, and undoubtedly if the plaintiff had paid his money, as a simple purchaser at a tax sale, without any agreement for repayment in case any irregularity should exist or be discovered, he could not have recovered back the money thus paid.   In such a case he would buy without warranty, and take such a title as the tax sale would give him.   (*Lynde* v. *The Town of Melrose,* 10 Allen, 49.)   But here it is alleged that at the sale made in 1864, the defendant expressly agreed that the purchase-money should be repaid if there was any irregularity in the assessment and tax proceedings prior to the sale.   It is not alleged how that agreement was made by the city.   Under the allegation the plaintiff could prove the making of the agreement in any way.   The city was interested in this tax sale and was entitled to a portion or all of the proceeds thereof, and it cannot be said that it was not competent to make the agreement in some form, either by an ordinance of its common council, or by the action of some officer who had been for a long time accustomed, with the knowledge and acquiescence of the legislative and executive officers of the city, to make such agreements.

It matters not that there is no allegation in the complaint that the money paid at the sale in 1864 was paid into the city treasury for the benefit of the city.   It is sufficient that the city was interested in the sale and entitled to at least a portion of the proceeds thereof.   As to the tax sale made in 1875 the registrar of arrears had the right to bid in the land for the city under section 18 of title 8 of chapter 863 of the Laws of 1873, and he had the power, under section 19, to sell the certificate to the plaintiff, and by section 20 it appears that the money received by him for such assignment must be applied for the

.benefit of the city. It cannot be doubted that the city could upon such a sale warrant the validity of the certificate.

We are, therefore, of opinion that the complaint stated a good cause of action against the defendant, and that the demurrer was not well taken, and that the judgment of the General Term should be reversed and that of the Special Term affirmed, with costs.

All concur, except TRACY, J., not voting.

Judgment accordingly.